**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2217
_____


MAYRA LOPEZ-BARRERA; A. A. S.-L.,
                                                    Petitioners

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

On Petition for Review of a
Decision of the Board of Immigration Appeals
(A220-452-749; A220-321-100)
Immigration Judge: Jason L. Pope
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 10, 2025

Before: SHWARTZ, RESTREPO, and CHUNG, *Circuit Judges*

(Filed:  April 16, 2025)
_____

OPINION[*]
_____


RESTREPO, *Circuit Judge*

---

[*]  This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Petitioners Mayra Lopez-Barrera and her child, citizens of Guatemala, sought refuge in the United States from the domestic violence they suffered at the hands of the child's father. They filed for asylum, withholding of removal, and CAT protection[1] after the Department of Homeland Security initiated removal proceedings against them. The immigration judge denied their applications, and the BIA[2] affirmed that decision. Although the immigration judge found Ms. Lopez-Barrera credible, he determined she and her child could not establish that Guatemalan authorities were unable or unwilling to protect them or that the harm they suffered rose to the level of torture necessary for CAT protection. The BIA agreed on these two dispositive issues and affirmed. For the reasons below, we will deny the petition for review of the BIA's decision.

## I.     Background

During the removal proceedings, Ms. Lopez-Barrera and her child conceded removability and applied for asylum, withholding of removal, and CAT protection. They sought relief based on the threats and domestic violence they suffered at the hands of Ms. Lopez-Barrera's former partner, Alexander Tomas Sanchez Gonzales ("Sanchez"), who is also the father of her child. The three lived together in Guatemala for about four and a half years.

---

[1] "CAT Protection" refers to protection under the regulations implementing the Convention Against Torture. *See* 8 C.F.R §§ 1208.16(c)–1208.18.

[2] "BIA" refers to the Board of Immigration Appeals.

In May 2020, Mr. Sanchez began physically abusing Ms. Lopez-Barrera, hitting her with a belt on at least one occasion. Another time he hit her with a tree branch, causing a wound that bled and took over a month to heal. Mr. Sanchez also physically abused their child. In December 2020, Ms. Lopez-Barrera discovered Mr. Sanchez was having an affair. A month later, she and her child moved out of their abuser's home.

Around this time, Mr. Sanchez also began harassing Ms. Lopez-Barrera, hacking her Facebook account and posting defamatory statements. Fed up with the harassment and physical abuse, Ms. Lopez-Barrera filed a complaint with Guatemalan authorities in January 2021 and obtained a six-month protective order against Mr. Sanchez. Still, Mr. Sanchez continued harassing and threatening Ms. Lopez-Barrera in open violation of the protective order. But Ms. Lopez-Barrera failed to report these violations or otherwise seek enforcement of the restraining order.

In February, Ms. Lopez-Barrera spoke with the Guatemalan authorities again after Mr. Sanchez threatened to take their child. Mr. Sanchez allegedly paid gang members to threaten and extort Ms. Lopez-Barrera, though she never paid them or reported these threats to authorities. In July, after the threats and extortion attempts continued, Ms. Lopez-Barrera and her child fled Guatemala for the United States. Even after their departure, the threats continued but were now directed at Ms. Lopez-Barrera's siblings.

At her merits hearing before the immigration judge, Ms. Lopez-Barrera testified that she did not pursue enforcement of the protective order because she believed doing so would have been futile given Mr. Sanchez's disregard of the law. While the immigration

3

judge found Mr. Lopez-Barrera credible and concluded that the harm she suffered rose to the level of persecution, he determined that she failed to establish that Guatemalan authorities were unable or unwilling to protect her.[3]  Finding this failure dispositive, the immigration judge denied Ms. Lopez-Barrera and her child's petitions and ordered them removed.

The BIA affirmed, agreeing that Ms. Lopez-Barrera's was not entitled to relief because she did not show that Guatemalan authorities were unable or unwilling to control her abuser.  It noted that the Guatemalan government "extended protection" to Ms. Lopez-Barrera "[t]o the extent [she] pursued and followed up on her complaints."  App. 4.  Thus, the BIA concluded she could not establish eligibility for asylum, withholding of removal, humanitarian asylum, or CAT protection.

## II.    Discussion

We have jurisdiction under 8 U.S.C. § 1252 and review the BIA's factual findings[4] for substantial evidence, giving them effect "unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. §1252(b)(4)(B); *see also Herrera-*

---

[3]  The immigration judge also found that the persecution was not on account of a protected ground.

[4]  "Because the BIA issued its own opinion, we review its decision rather than that of the IJ.  However, we also look to the decision of the IJ to the extent that the BIA defers to, or adopts, the IJ's reasoning."  *Patel v. Att'y Gen.*, 599 F.3d 295, 297 (3d Cir. 2010) (citing *Li v. Att'y Gen.*, 400 F.3d 157, 162 (3d Cir. 2005); *Chavarria v. Gonzalez*, 446 F.3d 508, 515 (3d Cir. 2006)).

*Reyes v. Att'y Gen.*, 952 F.3d 101, 106 (3d Cir. 2020). We review any legal issues de novo. *Herrera-Reyes*, 952 F.3d at 106.

To qualify for asylum, an applicant must establish, among other things, either (1) "*past persecution* on account of a protected ground, which creates a rebuttable presumption of a well-founded fear of future persecution," or (2) "a well-founded fear of future persecution on account of a protected ground without regard to past persecution." *Hernandez Garmendia v. Att'y Gen.*, 28 F.4th 476, 482 (3d Cir. 2022) (citing 8 C.F.R. § 1208.13(b)) (emphasis added). To obtain withholding of removal, the applicant must "establish[] a 'clear probability' of persecution upon removal." *Saban-Cach v. Att'y Gen.,* 58 F.4th 716, 724 (3d Cir. 2023). This requires consideration of whether the applicant has "show[n] that it is more likely than not that s/he would be persecuted if returned home. This analysis starts with the question of whether the petitioner can establish past persecution." *Id.* Thus, an applicant who cannot establish past persecution for asylum purposes cannot meet the standard for withholding of removal either. *Thayalan v. Att'y Gen.*, 997 F.3d 132, 138 (3d Cir. 2021).

When the alleged persecutor is a private actor, the applicant can establish past persecution only by showing that the government was "unable or unwilling to control" the persecutor. *Doe v. Att'y Gen.*, 956 F.3d 135, 142, 146, 151 (3d Cir. 2020). The BIA found Ms. Lopez-Barrera and her child's failure to satisfy the unable-or-unwilling-to-control test dispositive. So, unlike the immigration judge, the BIA did not reach whether

the persecution was based on a protected ground. Because we only review the BIA's decision, we need not reach the issue either.

After careful review of the record, we hold that substantial evidence supports the BIA's determination that Ms. Lopez-Barrera failed to establish that Guatemalan authorities were unable or unwilling to protect her from her abuser. When Ms. Lopez-Barrera sought protection, the authorities responded promptly and issued a protective order. Although the abuser subsequently violated this order, Ms. Lopez-Barrera did not report these violations to authorities, making it impossible to assess whether the authorities were unwilling or unable to enforce the order. In other words, without knowing how the state actors would have responded to the violations, we cannot conclude that the Guatemalan government was unable or unwilling to control her persecutor.

Ms. Lopez-Barrera contends that the State Department report on Guatemala supports her claim because it documents widespread violence against women throughout the country. While she is correct that the report explains that violence against women remains a serious problem, it also describes the existence of "specialized courts for violence against women throughout the country" and "a 24-hour victim service center to provide medical, psychosocial, and legal support to victims, including restraining orders for their immediate protection." App. 309. These government initiatives—along with the prompt issuance of a restraining order here—provide the substantial evidence necessary to support the BIA's determination. And because Ms. Lopez-Barrera cannot

6

establish eligibility for asylum based on past persecution, she necessarily fails to meet the higher standard required for withholding of removal. *See Thayalan*, 997 F.3d at 145. Without establishing past persecution, Lopez-Barrera cannot qualify for humanitarian asylum either. *See* 8 C.F.R. § 1208.13(b)(1)(iii).

Ms. Lopez-Barrera's request for CAT protection fares no better. To qualify for CAT protection, she must show that it is "more likely than not" that she will be tortured if removed to Guatemala "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Galeas Figueroa v. Att'y Gen.*, 998 F.3d 77, 92 (3d Cir. 2021) (first quoting 8 C.F.R. § 1208.16(c)(2); then quoting *id.* § 1208.18(a)(1)). Torture is defined as "an extreme form of cruel and inhuman treatment." 8 C.F.R. § 1208.18(a)(2). Assessing governmental acquiescence to torture requires a two-part inquiry: first, a factual inquiry into the government's likely response to the feared harm; and second, a legal inquiry into whether that likely response amounts to acquiescence. *Galeas Figueroa*, 998 F.3d at 92.

The BIA's affirmance of the immigration judge's denial of CAT protection is supported by substantial evidence. As the immigration judge found, the threats by Mr. Sanchez or his gang-affiliated associates never rose to the level of torture. And the Guatemalan authorities demonstrated a willingness to assist Ms. Lopez-Barrera when she sought protection from domestic abuse. Because of how they responded to the reports of domestic abuse and threats, we have no reason to believe Guatemalan officials would acquiesce to more severe or cruel treatment of Ms. Lopez-Barrera.

7

In sum, we are satisfied that the BIA's factual determinations are supported by substantial evidence. Despite the violent abuse Ms. Lopez-Barrera and her child endured, we are duty-bound to uphold the BIA's denial of relief.

**III.    Conclusion**

For these reasons, we will deny the petition for review.